UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                 Case No. _____
                                                  **FILED UNDER SEAL**

NEELAM TANEJA UPPAL, M.D.,

    Defendant.
_____/

## COMPLAINT UNDER THE CONTROLLED SUBSTANCES ACT FOR INJUNCTIVE RELIEF AND CIVIL PENALTIES

### INTRODUCTION

1. The United States of America sues for injunctive relief and civil monetary penalties based on the defendants' violations of the Controlled Substances Act, 21 U.S.C. § 801, et seq. (the "CSA") and its implementing regulations, 21 C.F.R. § 1301, et seq.

2. Opioid abuse is a national public health emergency. The prescribing, dispensing, and distributing of controlled substances, including prescription opioid painkillers, without a legitimate medical purpose and outside the usual course of professional practice, exacerbates this crisis and harms the public health.

3. The defendant has both fueled and profited from the opioid epidemic by writing prescriptions not for a legitimate medical use and outside the usual course of professional practice. Specifically, the defendant, a medical doctor licensed in

1

Florida, wrote prescriptions for controlled substances based on text messages containing pictures of driver's licenses belonging to individuals she had never met. Dr. Uppal provided these illegitimately issued prescriptions to a person who paid her in cash.

4. Accordingly, the United States seeks to enjoin defendant's unlawful conduct to protect the public health and impose civil monetary penalties for past violations of the CSA.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter and all parties to this action pursuant to 21 U.S.C. §§ 842(c)(1)(A) and 882(a), 28 U.S.C. §§ 1331, 1345, 1355, and 1367(a).

6. This Court has personal jurisdiction over the defendant, and venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) because the defendant either resides in this district or transacts business in this district.

## PARTIES

7. The plaintiff is the United States of America.

8. The defendant Neelam Taneja Uppal is a medical doctor licensed to practice in Florida. According to her Florida Department of Health profile, Dr. Uppal is trained in internal medicine and infectious disease.

## LEGAL BACKGROUND

A. **Applicable statutes, regulations, and guidelines**

9. The CSA and its implementing regulations govern the manufacturing,

distributing, and dispensing of controlled substances in the United States. Congress recognized the importance of preventing the diversion of drugs from legitimate medical or scientific uses to any other illegitimate uses. The CSA establishes a closed regulatory system under which it is unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA. 21 U.S.C. § 841(a).

10. The CSA categorizes controlled substances in five schedules. As relevant here, controlled substances in schedules II through V may be prescribed by licensed medical providers holding a valid DEA registration.

11. Schedule I consists of substances that have "a high potential for abuse," "no currently accepted medical use in treatment in the United States," and "a lack of accepted safety for use under medical supervision." 21 U.S.C. § 812(b)(1); 21 C.F.R. § 1308.11.

12. Schedule II contains drugs with "a high potential for abuse" that "may lead to severe psychological or physical dependence" but nonetheless have "a currently accepted medical use in treatment." 21 U.S.C. § 812(b)(2).

13. Schedule III contains drugs in which, although the abuse potential is less than a Schedule II drug, such abuse may lead to moderate "physical dependence or high psychological dependence." Schedule III drugs also have "a currently accepted medical use." 21 U.S.C. § 812(b)(3).

14. Schedule IV contains drugs that, although having a lower abuse potential than Schedule III drugs, still may lead to a physical or psychological

dependence when abused.  21 U.S.C. § 812(b)(4).

15. Schedule V contains drugs that, although having a lower abuse potential than Schedule IV drugs, still may lead to a physical or psychological dependence when abused. 21 U.S.C. § 812(b)(5).

16. As relevant here, the following substances are controlled substances regulated under the CSA:

 a. Promethazine-Codeine (Schedule V);
 b. Oxycodone (Schedule II);
 c. Hydromorphone (Schedule II).

17. The term "distribute" means to deliver (other than by administering or dispensing) a controlled substance or a listed chemical. The term "distributor" means a person who so delivers a controlled substance or a listed chemical. 21 U.S.C. § 802(11).

18. The term "dispense" means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling or compounding necessary to prepare the substance for such delivery. The term "dispenser" means a practitioner who so delivers a controlled substance to an ultimate user or research subject. 21 U.S.C. § 802(10).

19. The terms "deliver" or "delivery" mean the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship. 21 U.S.C. § 802(8).

20. The issuance of a controlled substance prescription is the constructive

transfer of controlled substances.

21. The CSA requires those who manufacture, distribute, or dispense controlled substances to obtain a registration from the DEA. 21 U.S.C. § 822(a). A registrant is permitted to dispense or distribute controlled substances only "to the extent authorized by their registration and in conformity with the [CSA]." 21 U.S.C. § 822(b).

22. Unless dispensed directly by a practitioner (other than a pharmacist) to an ultimate user, no Schedule II controlled substance may be dispensed without the written prescription of a practitioner, such as a physician. 21 U.S.C. § 829(a). Unless dispensed directly by a practitioner (other than a pharmacist) to an ultimate user, no Schedule III or IV controlled substance may be dispensed without a written or oral prescription from a practitioner. 21 U.S.C. § 829(b). No controlled substance in schedule V . . . may be distributed or dispensed other than for a medical purpose. 21 U.S.C. § 829(c).

23. A prescription for a controlled substance is valid only if issued "for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a); *United States v. Moore*, 423 U.S. 122, 140-42 (1975); *Ruan v. United States*, 142 S. Ct. 2370, 2382 (2022) (explaining that this is an objective standard).

24. "An order purporting to be a prescription issued not in the usual course of professional treatment . . . is not a prescription within the meaning and intent" of 21 U.S.C. § 829 and "the person issuing it shall be subject to the penalties provided

for violations of the provisions of law relating to controlled substances." *Id*.

25. Under the CSA "It shall be unlawful for any person—. . . "who is subject to the requirements of part C to distribute or dispense a controlled substance in violation of section 829 of this title." 21 U.S.C. § 842(a)(1). Civil penalties may be imposed for the violation of this provision.

26. Acting in the usual course of professional practice includes complying with all applicable state law governing the practice of medicine.

27. In Florida, the "prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." Fla. Stat. § 766.102.

28. A physician who prescribes a controlled substance in Schedules II through IV must also abide certain minimum standards of practice for controlled substances prescribing. Fla. Stat. § 456.44(2)-(3).

**B.    Penalties and other remedies**

29. The penalty for a person who violates 21 U.S.C. § 842(a)(1) is as much as $67,627 for each violation. *See* 21 U.S.C. § 842(c)(1)(A); 28 C.F.R. § 85.5.

30. The CSA authorizes federal courts to enjoin violations of the CSA, including violations of Section 842(a)(1).

## FACTUAL ALLEGATIONS

31. On May 11, 2022, law enforcement received a report of potentially fraudulent prescriptions for promethazine with codeine cough syrup ("promethazine-

6

codeine") being filled at pharmacies in Pinellas, Pasco, and Hillsborough Counties. The individual filling the prescriptions was a known drug trafficker and the prescriptions were written in the name of Dr. Uppal.

32. Oxycodone is a potent opioid and the 30mg formulation is the highest strength formulation of immediate-release oxycodone, is often diverted, and has a significant street value.

33. Promethazine-codeine is a Schedule V controlled substance. When prescribed legitimately, the drug is used as an acute cough suppressant. Codeine is an opioid. However, promethazine-codeine is commonly diverted and abused, and is often an item stolen in pharmacy robberies. When used recreationally, it is often mixed with beverages or other drugs. One bottle of promethazine-codeine, which costs relatively little to purchase through a pharmacy,[1] commands several thousand dollars when sold illicitly on the street.

34. Suboxone is an opioid and a controlled substance in schedule III and is approved to treat the symptoms of opioid withdrawal. Suboxone is, however, prone to abuse and has a retail street value.

35. Buprenorphine is an opioid and a controlled substance in schedule III and is approved to treat the symptoms of opioid withdrawal. Buprenorphine is also is prone to abuse and has a retail street value.

---

[1] *See* https://www.goodrx.com/promethazine-codeine?form=syrup&dosage=6.25mg-10mg-5ml&quantity=470&label_override=promethazine-codeine.

36. Dr. Uppal maintains a clinical practice at 1407 Gulf to Bay Boulevard, Clearwater, Florida. Dr. Uppal does not engage in telehealth or electronic prescribing.

37. In June, 2022, law enforcement was alerted that Dr. Uppal writes prescriptions in exchange for cash, charging $450 for an oxycodone prescription and $650 for a promethazine-codeine prescription. Dr. Uppal issues purported prescriptions based on the information provided on a driver's license but without seeing or having a doctor-patient relationship with the person depicted in the license.

38. Subsequently, law enforcement conducted two controlled purchases of controlled substance prescriptions from Dr. Uppal during which she wrote prescriptions based on nothing more than images of driver's licenses sent to her by text message. She was paid in cash for writing these illegitimate prescriptions.

39. On the first controlled purchase of illegitimate prescriptions on June 24, 2022, Dr. Uppal sold six prescriptions written for the identities shown in three driver's licenses sent to her by text message in exchange for $3,300. None of the individuals in those licenses was present for the transaction or had previously met Dr. Uppal. In fact, Dr. Uppal herself was being treated at a local hospital when she wrote the prescriptions.

40. Of the six illegitimate prescriptions she wrote on that occasion, three were for 62 oxycodone 30mg tablets and three were for a 16-ounce bottle of promethazine-codeine, which is an entire bottle.

41. During the second controlled purchase just four days later on June 28,

2022, Dr. Uppal sold 12 prescriptions written for the identities shown in six driver's licenses sent to her by text message in exchange for $5,600. Dr. Uppal was at home when she wrote these prescriptions. None of the individuals in those licenses was present for the transaction or had previously met Dr. Uppal.

42. During the second controlled purchase of illegitimate prescriptions, Dr. Uppal wrote five prescriptions, each for between 50 and 62 oxycodone 30mg tablets; five prescriptions for 16-ounce bottles of promethazine-codeine; one prescription for suboxone; and one prescription for buprenorphine.

43. During the second controlled purchase on June 28, 2022, Dr. Uppal said: "Like ten years ago they arrested a lot of doctors just because they were writing opioids." Dr. Uppal also said that "[t]here was a big supreme court case that the doctors won on opioid prescriptions . . . the court said that if the doctor is treating medically with opioids the prosecutors can't prosecute. That's a win for a lot of doctors." This appears to be a reference to the United States Supreme Court's decision in *Ruan v. United States*, which was issued on June 27, 2022. Dr. Uppal commented "that's a big case that the doctors won."

44. At a minimum, the 18 prescriptions issued by Dr. Uppal described in the foregoing paragraphs was issued not for a legitimate medical purpose, in violation of the CSA's provisions in 21 U.S.C. § 829 and regulations governing the issuance of a prescription in 21 C.F.R. § 1306.04(a).

45. This is likely only a small example of much more widespread conduct by Dr. Uppal that began long before law enforcement became aware of it.

46. Additionally, a review of prescriptions written by Dr. Uppal and filled at Florida pharmacies indicates that Dr. Uppal has issued many more prescriptions for oxycodone, promethazine-codeine, and other powerful controlled substances in violation of the CSA.

## COUNT I

**Controlled Substances Act
21 U.S.C. § 842(a)(1)
Civil Penalty Liability**

47. The United States re-alleges paragraphs 1-46.

48. Title 21, U.S.C. § 842(a)(1) makes it unlawful for any person subject to Part C of the CSA to distribute or dispense a controlled substance in violation of 21 U.S.C. § 829. The defendant is subject to Part C of the CSA.

49. The defendants Neelam Uppal, M.D., violated 21 U.S.C. § 829 by distributing or dispensing prescriptions without a legitimate medical purpose and issued outside the usual course of professional practice for Schedule II, III, or IV controlled substances that also were prescription drugs under the Federal Food, Drug, and Cosmetic Act, in violation of 21 C.F.R. § 1306.04.

50. The defendants Neelam Uppal, M.D., is liable to the United States for a civil penalty of not more than $67,627 for each violation pursuant to 21 U.S.C. § 842(c)(1)(A) and 28 C.F.R. § 85.5.

## COUNT II

**Controlled Substances Act
21 U.S.C. § 843(f)(1) and 882(a)
Permanent Injunctive Relief**

51.     The United States re-alleges paragraphs 1-46.

52.     Under 21 U.S.C. § 843(f), the Attorney General of the United States may seek declaratory or injunctive relief for violations of 21 U.S.C. § 842 and 21 U.S.C. § 856.  More broadly, 21 U.S.C. § 882(a) provides for any violation of the CSA to be enjoined.

53.     Based on the violations alleged in this complaint, the United States requests a temporary, preliminary, and permanent injunction (i) prohibiting the defendant from dispensing, administering, or distributing any controlled substance, as those terms are defined in the Controlled Substances Act, 21 U.S.C. § 802, including prescribing any controlled substance, either directly or through anyone else; (ii) prohibiting the defendant from serving as a manager, owner, or operator of any entity, including a pain clinic or pharmacy, that administers, dispenses, or distributes controlled substances; (iii) prohibiting the defendant from applying for or seeking renewal of any DEA Certificate of Registration on her behalf or on behalf of any corporate entity; (iv) any other injunctive relief the Court deems appropriate and just.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests that judgment be entered in its favor and against the defendant as follows:

1. Impose civil penalties up to the maximum amount allowed by law for each violation of 21 U.S.C. § 842(a)(1) committed by the defendant;

2. Enter a preliminary and permanent injunction to prevent future violations, as described above;

3. Award the costs associated with the investigation, prosecution, and collection of the penalties and other relief in this matter; and

4. Award any other relief deemed just by the Court.

Respectfully submitted on this 18th day of July, 2022,

>ROGER HANDBERG
>United States Attorney
>
>/s/Lindsay S. Griffin
>LINDSAY SAXE GRIFFIN
>Assistant United States Attorney
>Florida Bar No. 72761
>400 North Tampa Street, Suite 3200
>Tampa, FL 33602
>Telephone No. (813) 274-6155
>Facsimile No. (813) 274-6200
>Lindsay.Griffin@usdoj.gov