**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                  Case No.:

                                               **FILED *EX PARTE***

NEELAM TANEJA UPPAL, M.D.,         **AND UNDER SEAL**

                                               **TIME-SENSITIVE**

      Defendant.

_____/

**MOTION FOR A TEMPORARY RESTRAINING ORDER**
**AND PRELIMINARY INJUNCTION – TIME-SENSITIVE**

Under Rule 65, Federal Rules of Civil Procedure, and Local Rule 6.01, the United States moves *ex parte* for a temporary restraining order and preliminary injunction and says:

**I.      INTRODUCTION**

The defendant Dr. Neelam Taneja Uppal is a drug dealer. She sells prescriptions for oxycodone and promethazine with codeine based on nothing more than a text message and a handful of cash. In at least two transactions with law enforcement, Dr. Uppal wrote more than a dozen prescriptions for controlled substances to individuals Dr. Uppal had never met or examined based on text messages containing images of driver's licenses. For all she knew, those individuals may not have existed. In fact, they were undercover identities created by law

enforcement and not real people. She conducted these drug deals while in a hospital bed awaiting medical care and while in her home. Dr. Uppal even bragged about how the recent Supreme Court opinion in *Ruan v. United States* would shield doctors from prosecutors. Now, the United States asks this court for a temporary restraining order and preliminary injunction under 21 U.S.C. § 843(f) and 882(a), Rule 65, Federal Rules of Civil Procedure, and Local Rule 6.01, to immediately stop Dr. Uppal's illegal activity.

## II.   FACTUAL BASIS

### A.   Dr. Neelam Taneja Uppal

The factual basis for a temporary restraining order and preliminary injunction is described in the sworn declaration of Drug Enforcement Administration ("DEA") Diversion Investigator Shaakira Hamm, which is attached as **Exhibit A** to this motion.

### B.   Persons and conduct subject to restraint.

This motion seeks to temporarily and preliminarily restrain Dr. Uppal by prohibiting her from (1) administering, dispensing, or distributing controlled substances, as those terms are defined in the Controlled Substances Act, 21 U.S.C. § 802, including prescribing any controlled substance; (2) applying for or seeking renewal of a DEA certificate of registration on behalf of herself or any legal entity; (3) prohibiting her managing, controlling, or operating any legal entity that dispenses, distributes, or administers controlled substances; (4) requiring her to

preserve all records related to her prescribing of controlled substances.

### C.    Security

Under Rule 65(c), "[t]he United States, its officers, and its agencies are not required to give security."

## III.    MEMORANDUM OF LAW

### A.    The Controlled Substances Act

#### i.    The purpose is to protect the health and welfare of Americans.

The Comprehensive Drug Abuse Prevention and Control Act of 1970, otherwise known as the Controlled Substances Act, 21 U.S.C. § 801, et seq., (the "CSA") regulates the manufacture, import, possession, use, and distribution of certain substances. Those substances reside on one of five schedules depending on the potential for abuse, the accepted medical use in treatment in the United States, and the consequence of abuse. 21 U.S.C. § 812. Congress enacted the statute in part because "the illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a detrimental effect on the health and welfare of the American people." 21 U.S.C. § 801.

The CSA requires those who dispense or distribute controlled substances to obtain a registration from the DEA. 21 U.S.C. §§ 802(10), (21), 822(a). A DEA registration, however, is not a blank check. Rather, a registrant may act only "to the extent authorized by the[] registration and in conformity with the" CSA. 21 U.S.C. § 822(b). For a physician, the CSA "limit[s] a registered physician's dispensing authority to the usual course of his 'professional practice.'" *United States v. Moore*, 423

3

U.S. 122, 140 (1975).

      ii.    **The CSA provides for an injunction.**

Section 843(f) of the CSA authorizes the Attorney General to sue for an injunction related to violations of Sections 842, and Section 882 provides United States District Courts jurisdiction to enjoin any violation of Subchapter I. "The court shall proceed as soon as practicable to the hearing and determination" of an action for an injunction. 21 U.S.C. § 843(f). CSA precedent supports enjoining registrants and non-registrants who violated the CSA and limiting their ability to further deal in controlled substances. *United States v. WeCare Pharmacy et al.,* Case No. 8:21-cv-188-MSS-AEP (M.D. Fla. Jan. 26, 2021); *Advance Pharmaceutical v. United States*, 391 F.3d 377, 389-90, 400 (2d Cir. 2004); *United States v. Oakley Pharmacy et al.,* Case No. 2:19-cv-0009, Doc. 10 (M.D. Tenn. Feb. 21, 2019); *United States v. Gerber*, Case No. 3:18-cv-1908, Doc. 12) (N.D. Ohio Aug. 30, 2018); *United States v. Salcedo*, 2003 WL 21196843, *3 (E.D.N.Y. Feb. 19, 2003).

    B.    **The United States satisfies the requirements of Rule 65 and LR 6.01.**

Rule 65(b), Federal Rules of Civil Procedure, permits a temporary restraining order without notice to the adverse party if "immediate and irreparable injury, loss, or damage will result . . . before the adverse party can be heard in opposition" and if the movant's attorney certifies efforts to provide notice or reasons why notice should not be required.

Rule 65(a), Federal Rules of Civil Procedure, permits a preliminary injunction on notice to the adverse party. The purpose of a preliminary injunction "is to protect

against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 357 F. Supp. 2d 1378, 1383 (M.D. Fla. 2005). The movant must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### i.    The United States has a substantial likelihood of success.

"A substantial likelihood of success on the merits requires a showing of only likely or probable, rather than certain, success." *Schiavo*, 357 F. Supp. 2d at 1383. Here, the United States has a substantial likelihood of success on the claim that Dr. Uppal violated the CSA by issuing controlled substance prescriptions outside the usual course of professional practice and not for a legitimate medical purpose. Registered physicians may dispense[1] controlled substances, but only consistent with the requirements of 21 U.S.C. § 829. Section 842(a)(1) prohibits violations of Section 829 and imposes a civil penalty for each violation as described in 21 U.S.C. § 842(c)(1)(A). Specifically, Section 842 says:

**(a) Unlawful acts**

It shall be unlawful for any person—

---

[1] "Dispense" means "to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling or compounding necessary to prepare the substance for such delivery." 21 U.S.C. § 802.

(1) who is subject to the requirements of Part C to distribute or dispense a

controlled substance in violation of section 829 of this title[.]

To comply with Section 829, a physician must satisfy the requirements of 21

C.F.R. § 1306.04, which defines a valid prescription for purposes of Title 21 as one

that is issued for a legitimate medical purpose by a practitioner acting in the usual

course of professional practice. Whether a physician issued a prescription for a

legitimate medical purpose in the usual course of professional practice requires

determining whether the physician acted "'in accord[] with a generally-accepted

standard of medical practice.'" *Ruan v. United States*, 142 S. Ct. 2370, 2382 (2022)

(explaining that this is an objective standard); *United States v. Enmon*, 686 F. App'x

769, 772 (11th Cir. 2017) (quoting *United States v. Merrill*, 513 F.3d 1293, 1306 (11th

Cir. 2008)); *United States v. Joseph*, 709 F.3d 1082, 1097 (11th Cir. 2013). The CSA

leaves the states to define the standards of professional practice. *United States v. Tobin*,

676 F3d 1264, 1275-76 (11th Cir. 2012), abrogated on other grounds by *United States*

*v. Davila*, 569 U.S. 597, 610 (2013).

Although expert testimony may shed light on the legitimacy of a prescription,

"there are cases in which the lay testimony is so clear that no expert testimony is

required to determine that the defendant's actions were not for a legitimate medical

purpose or in the usual course of professional practice." *United States v. Elliott*, 876

F.3d 855, 865 (6th Cir. 2017); *United States v. Pellmann*, 668 F.3d 918, 923 (7th Cir.

2012) (describing other, similar federal circuit opinions).

This is a case in which expert testimony is not required to explain the medical

6

illegitimacy of Dr. Uppal's sale of controlled substance prescriptions. Dr. Uppal demonstrated nothing resembling professional medical practice in writing controlled substance prescriptions. Rather, Dr. Uppal behaved just like a drug dealer when she exchanged cash for controlled substance prescriptions based on nothing more than a text message. On at least two occasions she wrote prescriptions for highly coveted, highly diverted controlled substances after receiving images of driver's licenses belonging to individuals that she had never met. In exchange for the drugs that she could furnish with her prescription pad and her pen, Dr. Uppal demanded thousands of dollars. Therefore, the United States will likely succeed on its claim under Section 842(a)(1) that Dr. Uppal wrote controlled substances in violation of Section 829.

### ii. The threat of imminent, irreparable harm exists in the form of addiction, overdoses, and death.

Although the illegal activity attributed to Dr. Uppal in this motion is significant, this is just a small sample of behavior that has likely occurred over months, or even years. Based on the observations of law enforcement before the controlled purchases and the information provided by the confidential informant, Dr. Uppal has likely written dozens, if not hundreds, of prescriptions based on nothing more than a text messaged driver's license.

The defendant's actions have caused irreparable harm and the United States lacks an "adequate remedy at law, meaning that its injury 'cannot be undone through monetary remedies.'" *Morris Commc'ns Corp. v. PGA Tour, Inc.*, 117 F. Supp. 2d 1322, 1330 (M.D. Fla. 2000) (quoting *Cunningham v.* Adams, 808 F.2d 815, 821 (11th Cir.

1987)). Irreparable harm "must be neither remote nor speculative, but actual and imminent." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

Death and bodily harm are quintessential forms of irreparable harm. *See Schiavo*, 357 F. Supp. 2d at 1383; *Planned Parenthood Southeast, Inc. v. Bentley*, 951 F. Supp. 2d 1280, 1289 (M.D. Ala. 2013); *Jones "El v. Berge*, 164 F. Supp. 2d 1096, 1123 (W.D. Wisc. 2001); *Al-Joudi v. Bush*, 406 F. Supp. 2d 13, 19-20 (D.D.C., 2005). The writing of prescriptions for highly abused and diverted opioids based on nothing more than a text message poses a real and substantial threat to those who obtain the drugs. Opioids are highly addictive, often abused, and when mixed with other substances can cause a person to stop breathing. Through her conduct, Dr. Uppal is distributing drugs to people she knows nothing about. These people were never bona fide patients of Dr. Uppal, and therefore she knows nothing about their medical condition, let alone existence. This conduct threatens irreparable physical harm to the citizens of this community.

### iii. The threatened injury to patients outweighs the potential harm to the defendant.

The risk of serious physical harm or death resulting from the defendant's unlawful conduct indisputably outweighs the potential harm to them and to others.

Although an injunction against Dr. Uppal's controlled substance prescribing could deprive whatever legitimate patients she has of legitimate prescriptions, "there is a weighty public interest in preventing the illegal diversion of prescription drugs, particularly in light of the rampant and deadly problem of prescription drug abuse[.]"

8

*Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 230 (D.D.C. 2012). Plenty of other physicians practice throughout the Tampa Bay region, and therefore any legitimate need can be satisfied by another physician at a different clinic who has not betrayed the practice of medicine by engaging in cash for drugs transactions.

Furthermore, Dr. Uppal can continue to see patients, to practice medicine, to make referrals, and to engage or recommend any of the many non-narcotic therapies for treating any variety of conditions. She will simply lack, temporarily, the ability to prescribe controlled substances while the legal process to evaluate her prescribing practices is pending. She cannot complain that an injunction will put her out of business because he "can have no vested interest in a business activity found to be illegal." *United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 29 (2d Cir. 1972). The prescriptions identified in this motion are just that. In any event, the United States trusted Dr. Uppal "to be [a] conscientious gatekeeper[] to these dangerous and potentially fatal drugs." *United States v. Garrison*, 888 F.3d 1057, 1059 (9th Cir. 2018). She betrayed that trust and abused the privilege of her prescription pad.

### iv.    An injunction comports with the public interest.

The public interest favors an injunction. While a pandemic of historic proportions griped the world's attention and resources over the last two years, the scourge of opioid addiction continued and, in terms of overdose deaths, has

worsened.[2] Physicians are the front line in this public health crisis and, when they abuse their authority, they should not be allowed to perpetuate that abuse during the pendency of the legal process. By limiting dispensing authority to prescriptions issued in the usual course of professional practice, the CSA carries "an implied finding [by Congress] that violations will harm the public and ought, if necessary, be restrained." *United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 28 (2d Cir. 1972). The United States therefore has "a strong interest in enforcing the CSA and ensuring that pharmaceutical drugs are not improperly diverted" while proceedings against a registrant are pending. *Cardinal Health*, 846 F. Supp. 2d at 230.

### v. The United States faces irreparable harm, loss, or damage if notice is given to the defendant.

Rule 65 permits a court to issue a temporary restraining order without notice only if "specific facts … clearly show that immediate and irreparable injury, loss, or damage will result to the movant." Fed. R. Civ. P. 65(b)(l)(A). As explained above, to demonstrate irreparable harm, the United States must lack an "adequate remedy at law, meaning that its injury 'cannot be undone through monetary remedies.'" *Morris Commc'ns Corp. v. PGA Tour, Inc.*, 117 F. Supp. 2d 1322, 1330 (M.D. Fla. 2000) (quoting *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987). The irreparable harm "must be neither remote nor speculative, but actual and imminent." *Siegel v. LePore*, 234 F.3d

---

[2] *See* "The Opioid Epidemic During the COVID-19 Pandemic," available at https://jamanetwork.com/journals/jama/fullarticle/2770985 (last visited Jul. 17, 2022).

1163, 1176 (11th Cir. 2000).

A temporary restraining order without prior notice is necessary here. The Pinellas County Sheriff's Office, together with the DEA, plans to execute search warrants at multiple locations on July 18 or 19, 2022, related to a parallel criminal investigation. Advance notice would provide Dr. Uppal an opportunity to conceal or destroy relevant evidence. Therefore, this motion should be granted without prior notice to the defendant. The defendant can be fully protected by prompt post-TRO notice and opportunity for a hearing, both of which can be required by the terms of the temporary restraining order itself and have in fact been incorporated into the proposed order submitted with this motion.

## IV.    CONCLUSION

Accordingly, the United States respectfully requests a temporary restraining order in the form attached as **Exhibit B** to this motion.

Respectfully submitted on this 18th day of July, 2022,

ROGER HANDBERG
United States Attorney

/s/Lindsay S. Griffin
LINDSAY SAXE GRIFFIN
Assistant United States Attorney
Florida Bar No. 72761
400 North Tampa Street, Suite 3200
Tampa, FL 33602
Telephone No. (813) 274-6155
Facsimile No. (813) 274-6200
Lindsay.Griffin@usdoj.gov