## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                           Case No. 8:22-cv-1622-TPB-JSS

NEELAM TANEJA UPPAL, M.D.,

      Defendant.

_____/

## RESPONSE IN OPPOSITION TO MOTION TO STAY

      The United States responds in opposition to the defendant's motion to stay, Doc. 44, and says:

## INTRODUCTION

      A stay is premature and unsupported. A stay requires "special circumstances" in which a defendant faces "automatic" entry of summary judgment. Dr. Uppal is not facing summary judgment. The United States has withdrawn the discovery requests served on Dr. Uppal and has not sought her deposition, so no Fifth Amendment invocation is required or imminent. Contrary to Dr. Uppal's claim, the United States needs neither Dr. Uppal's testimony nor an adverse inference to prove its case. Neither does Dr. Uppal lose her only effective defense if she fails to testify.

      In her motion, Dr. Uppal offers nothing more than a blanket assertion of privilege and fails to articulate the Fifth Amendment violation that would occur absent a stay. She also fails to fully and adequately assess the factors supporting a

stay. Accordingly, the Court should deny without prejudice Dr. Uppal's motion.

## BACKGROUND

This case began at the same time as three others. Shortly after the United States sued Dr. Uppal under the Controlled Substances Act, 21 U.S.C. § 801, et seq., for a temporary restraining order, the Pinellas County Sheriff's Office arrested Dr. Uppal on charges of drug trafficking under Section 893.135(1)(C), Florida Statutes. Contemporaneously, Pinellas County Sheriff Bob Gualtieri filed a civil forfeiture action against $1,911,305.74 and a variety of precious metals seized in connection with the drug trafficking charges against Dr. Uppal.[1] **Exhibit 1**. Additionally, the Drug Enforcement Administration served Dr. Uppal with an order to show cause and immediate suspension order of Dr. Uppal's certificate of registration ("COR").[2] All four cases share some, but not all, of the same operative facts. This action is the broadest in scope, alleging that Dr. Uppal's prescribing in violation of the CSA occurred over many months and years preceding her arrest by law enforcement. Doc. 1, ¶ 45-46.

Also pending is administrative proceeding against Dr. Uppal's Florida medical license. **Exhibit 3**. The DOH complaint derives from a medical malpractice action in 2010 against Dr. Uppal for prescribing a controlled substance "other than in the

---

[1] *In re Forfeiture of One Million Nine-Hundred-Eleven-Thousand Three-Hundred Five Dollars and 74/100 ($1,911,305,74) U.S. Currency, et al.*, Case No. 22-003743-CI (Filed Sept. 8, 2022).

[2] On December 24, 2022, Dr. Uppal requested that the DEA retire her COR, which DEA construed as a surrender for cause and which terminated that case. **Exhibit 2**.

usual course of the physician's professional practice" and failing to keep legible medical records justifying the course of treatment. *Id.* at ¶ 6. DOH alleges that, in violation of the terms of her probation, Dr. Uppal began practicing medicine by providing pain management care to patients in Tampa. *Id.* at ¶ 14-16. An administrative hearing is scheduled in that matter for May 23, 2023.

## <u>MEMORANDUM OF LAW</u>

### I.  A stay is the exception, not the rule, and requires "special circumstances"

"It is the rule, rather than the exception[,] that civil and criminal cases proceed together." *Transamerica Life Ins. Co. v. Brickman*, Case No.: 6:15-cv-1919-Orl-41TBS, 2016 WL 3552748, *2 (M.D. Fla. June 30, 2016). "'The Constitution does not require a stay of civil proceedings pending the outcome of related criminal proceedings.'" *Id.* (quoting *Shell Oil Co. v. Altina Assoc. Inc.*, 866 F. Supp. 536, 540 (M.D. Fla. 1994). Rather, "a court must stay a civil proceeding pending resolution of a related criminal prosecution only when "special circumstances" so require in the "interests of justice." *United States v. Lot 5 Fox Grove Alachua County, Fla.*, 23 F.3d 359, 364 (11th Cir. 1994). The fact of a parallel proceeding does not alone constitute "special circumstances." *Brickman*, 2016 WL 3552748 at *2.

Furthermore, the "Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *United States v. Premises Located at Route 13*, 946 F.2d 749, 756 (11th Cir. 1991); *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). Thus, "[a] blanket assertion of

3

the privilege [against compulsory self-incrimination] is an inadequate basis for the issuance of a stay." *Brickman*, 2016 WL 3552748 at *2. Rather, the Fifth Amendment is violated only "when a person, who is a defendant in both a civil and a criminal case, is forced to choose between waiving his privilege against self-incrimination or losing the civil case on summary judgment." *Id.* To trigger this rule, "the invocation of the privilege must result in an adverse judgment, not merely the loss of [her] most effective defense." *Id.*; *S.E.C. v. Fernandez*, Case No. 6:19-cv-1843-ORl-37LRH, 2020 WL 4743025, *1 (M.D. Fla. April 15, 2020). In other words, denial of a stay is appropriate as long as the invocation of privilege does not result in "automatic" entry of summary judgment. *Id.*; *Lot 5*, 23 F.3d at 364.

## II.   Undue prejudice to the United States, the Court's interests, and other factors weigh against a stay.

To determine whether a Fifth Amendment invocation would result in an automatic adverse judgment, courts consider the following:

> 1) the extent to which issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously against the prejudice to the plaintiffs caused by the delay; 4) the private interests and burden on the defendants; 5) the interest of the courts; and 6) the public interest.

*Brickman*, 2016 WL 3552748, at *2.

**Issues one and two.** This action alleges a broader course of misconduct than the state criminal case. While the criminal action focuses on specific instances of misconduct observed by law enforcement, the civil action alleges that Dr. Uppal issued many

4

prescriptions in violation of the Controlled Substances Act, and that the prescriptions identified in the criminal case are "likely only a small example of much more widespread conduct by Dr. Uppal that began long before law enforcement became aware of it." Doc. 1, ¶ 45-46. The United States further alleges in the civil case that "Dr. Uppal has issued many more prescriptions for oxycodone, promethazine-codeine, and other powerful controlled substances in violation of the CSA." Doc. 1, ¶ 45-46. Therefore, the United States intends to seek discovery relating to a broad course of alleged misconduct, including prescriptions not included in the criminal case.

Issue three. Dr. Uppal requests a stay "pending resolution" of the state criminal case, which essentially means a hiatus of years in this case. The United States will suffer undue prejudice if prohibited from proceeding with discovery now, while witness memories are fresh and while witnesses, records, documents are more easily located. *See United States ex rel. Silva v. VICI Marketing, LLC*, Case No. 8:15-cv-444-T-33TGW, 2019 WL 448763, *3-4 (Feb. 5, 2019) (explaining that concerns about fading memories and the disappearance of evidence are legitimate concerns and that the Court takes seriously the United States' right to proceed with its claims.) For example, the United States primarily seeks medical records related to Dr. Uppal's prescribing. Although the United States has obtained some paper records that were seized during a search warrant on Dr. Uppal's clinic, the United States has not located electronic health records. The United States believes that, at some point, Dr. Uppal may have had a cloud-based electronic medical records system with a third party. Any such records could become inaccessible

5

or unavailable in the years to come should the case be stayed and the United States is unable to explore those discovery avenues now through third-party subpoenas.

A stay will also result in one-sided discovery in which Dr. Uppal has a broad right to discovery in her state criminal case and may seek to take depositions and obtain other discovery, while the United States is unable to question witnesses or gather documents for many months or years. The United States will be prevented from developing its broader case against Dr. Uppal and could be limited in practice to whatever evidence Dr. Uppal and the state prosecutor generate in the coming years on a much more narrow set of factual allegations.

Dr. Uppal's stipulation to a preliminary injunction and surrender of her COR do not obviate the need for the government to pursue the relief sought in this case and therefore do not address the harm that the United States will suffer from a stay. The United States seeks permanent (not merely preliminary) injunctive relief that would prevent Dr. Uppal from, among other things, applying for a COR for any entity, or serving as a manager, owner, or operator of any entity, including a pain clinic or pharmacy, that administers, dispenses, or distributes controlled substances.  Doc. 1, ¶ 53. These terms are necessary to prevent Dr. Uppal from engaging in unlawful distribution of controlled substances through the guise of a corporate entity, or by hiring an employee with a COR to write unlawful prescriptions in a similar manner. Indeed, a key purpose of injunctive relief under the CSA is to stop a broader array of conduct than what is reachable by revoking a registrant's COR through an administrative process. A stay

would prejudice the United States' ability to pursue these claims by delaying discovery and litigation for years while the criminal case is resolved.

Furthermore, the terms of the stipulated preliminary injunction here weigh against a stay. At the suggestion of the Court, the parties agreed to a preliminary injunction in which Dr. Uppal may "withdraw her consent to th[e] stipulation at any time by providing notice to the Court, in writing." Doc. 38. The United States agreed to this stipulation provided that "nothing in this injunction shall be considered consent to a stay or closure of this civil action or a waiver of the United States' right to pursue through discovery and final judgment the United States' civil claims . . . including permanent injunctive relief and civil penalties." Doc. 38. The prejudice from a stay is discernable, unlike in *United States v. Pinnacle Quest Intern.*, 2008 WL 4274498, *2 (N.D. Fla. Sept. 11, 2008), where the Court entered a preliminary injunction after a contested hearing. Here, no contested hearing occurred, and Dr. Uppal can initiate proceedings at any time, which creates substantial prejudice to the United States if the civil case is stayed.

**Issue four**. In her motion, Dr. Uppal claims that a stay will significantly reduce her burden because she will not be required "to fight a war on two fronts." To date, however, Dr. Uppal has not moved to stay the action against her medical license, but is preparing to litigate with DOH on May 23. She also has not moved to stay Sheriff Gualtieri's civil forfeiture action, which alleges that the property "is a contraband article" and "used as an instrumentality in the commission of or in aiding or abetting in the commission of a felony[.]" **Ex. 1**. This belies the claim that Dr. Uppal requires

a stay to preserve her resources for resolution of the criminal proceeding before everything else. Clearly, Dr. Uppal is not unduly burdened by this case, but is choosing the fronts on which she prefers to fight.

Additionally, Dr. Uppal cites *Ruan v. United States*, 142 S. Ct. 2370, 2374 (2022), and claims that "the only way for [her] to win this case is for her to testify and explain why she believed the prescriptions she wrote on June 24 and June 28, 2022 were not outside the course of professional practice." Doc. 44, p. 8. This is untrue. First, *Ruan* interprets 21 U.S.C. § 841, which is a criminal statute requiring a mens rea of "knowingly and intentionally." Here, the United States sues under 21 U.S.C. § 842(a)(1), which is a civil statute that has no such mens rea requirement. Rather, the United States need show only that Dr. Uppal distributed or dispensed a controlled substance in violation of 21 U.S.C. § 829, which means showing that her purported prescriptions were not issued for a legitimate medical purpose in the usual course of her professional medical practice under 21 C.F.R. § 1306.04. In other words, the United States can prove its civil claims against Dr. Uppal with expert testimony, medical records, and other evidence. The United States does not need Dr. Uppal's testimony or adverse inferences from such testimony. Her subjective intent is irrelevant. Similarly, Dr. Uppal can defend against these civil claims with expert testimony, witnesses, and documents, including medical records. In her motion, Dr. Uppal fails to explain why she cannot follow that logical course.

**Issue five**. Here, the Court's interest in moving cases forward and resolving

cases on its docket is served by not staying this case at this time. Denying the requested stay will allow the civil case to move forward through discovery and up to summary judgment or trial, at which time the Court can reconsider any request for a stay. That would put the case in a better position for a resolution or, if necessary, continued litigation.

These interests are especially important here in light of Dr. Uppal's litigation history. A search of PACER reveals an extensive history of federal litigation by Dr. Uppal. She has filed approximately 70 federal civil actions, appeals, bankruptcy cases, and bankruptcy appeals, mostly *pro se*, including at least four lawsuits against the Florida Board of Medicine and one lawsuit against the State of New Jersey and members of the judiciary in the in the state of New Jersey.[3] **Exhibit 4.** Given Dr. Uppal's past proclivity in *pro se* proceedings, the Court has a strong interest in and will benefit substantially from allowing this civil case to proceed now, in a manner that does not violate Dr. Uppal's Fifth Amendment rights, while Dr. Uppal is represented by counsel.

Dr. Uppal further argues that a resolution of her criminal case will decide the outcome of both cases; specifically, that an adverse outcome in the criminal case will

---

[3] *Neelam Uppal v. State of New Jersey, et al.*, Case No. 8:03-cv-987-EAK (M.D. Fla. Jan. 1, 2003); *Neelam Uppal v. Florida Board of Medicine, et al.*, Case No. 8:15-cv-72-EAK-EJ (M.D. Fla. Nov. 11, 2014); *Neelam Uppal v. Florida Board of Medicine*, Case No. 1:14-cv-9024-ER (S.D.N.Y. Nov. 12, 2014); Neelam *Uppal v. Florida Department of Health (Board of Medicine)*, Case No. 8:19-cv-136-SDM-JSS (M.D. Fla. Dec. 28, 2018); *Neelam Uppal v. Florida Department of Health (Board of Medicine)*, Case No. 6:18-cv-2230-JA-KRS (M.D. Fla. Dec. 28, 2018);

obviate the need to litigate this case. This is also untrue. Unlike the defendants in *EMC Property & Cas. Co. v. 205 Customz, LLC,* 2015 WL 3554737, *2 (N.D. Ala. June 5, 2015) and *Lay v. Hixon*, 2009 WL 1357384, *3 (S.D. Ala. May 12, 2009), even if Dr. Uppal obtained an acquittal in the criminal case, the United States still would have civil claims against her under the CSA for prescribing before and after June 24, 2022. Conversely, even if convicted, Dr. Uppal would remain subject to civil monetary and injunctive claims, not only for the prescriptions at issue in the criminal case but also for additional prescriptions issued before and after the conduct observed by law enforcement. In sum, this case does not rise or fall on the outcome of the criminal case.

**Issue six.** The public interest favors this case proceeding alongside the criminal and civil forfeiture cases. The remedies for Dr. Uppal's allegedly unlawful prescribing could be substantial—the CSA authorizes a civil penalty of up to $67,627 per unlawful prescription and broad injunctive relief. Even if Dr. Uppal is convicted of drug trafficking, the public has a strong interest in ensuring through broad injunctive relief and monetary penalties that she never deals in controlled substances again.

Furthermore, none of the cases cited by Dr. Uppal—which she claims stand for the proposition that the public interest favors resolution of criminal cases before civil cases—applies here because those cases involve different facts or private plaintiffs. Aside from *Pinnacle*, in which the parties had a contested hearing for a preliminary injunction (which did not happen here), none of the cases cited by Dr. Uppal involves a civil

enforcement action by the United States. Rather, *Adkins* and *EMC* involve private plaintiffs alleging tort and contract claims against defendants who were also the subject of criminal charges. Here, the United States seeks to vindicate a public interest codified by Congress in the CSA to see that individuals who violate the CSA are properly restrained from doing so in the future.

## **CONCLUSION**

Accordingly, for the reasons stated above, the United States requests an order denying the motion to stay without prejudice, as well as all further just and appropriate relief.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General, Civil Division

ROGER HANDBERG
United States Attorney

_/s/Lindsay S. Griffin_
LINDSAY SAXE GRIFFIN
Assistant United States Attorney
Florida Bar No. 72761
400 North Tampa Street, Suite 3200
Tampa, FL 33602
Telephone No. (813) 274-6155
Facsimile No. (813) 274-6200
Lindsay.Griffin@usdoj.gov

ARUN RAO
Deputy Assistant Attorney General
Civil Division

AMANDA LISKAMM
Director, Consumer Protection
Branch

_/s/Scott Dahlquist_
SCOTT DAHLQUIST
THOMAS S. ROSSO
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044
Scott.B.Dahlquist@usdoj.gov
Thomas.S.Rosso@usdoj.gov
Telephone No. (202) 532-4602
Facsimile No. (202) 514-8742
Attorneys for the United States

12

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 21st day of April on all counsel of record via the CM/ECF electronic filing system.

/s/Lindsay S. Griffin
Assistant United States Attorney